is No. 15-2011 and No. 15-2012, Brenda Pippin v. Boulevard Motel Corp., and Grace Parker v. Boulevard Motel Corp. Mr. Clifford, good morning. Good morning. May I reserve two minutes for rebuttal? You may. Because the Maine Human Rights Commission will be presenting their portion of the case in five minutes, I just reserve it after they've had a chance to present their argument. May it please the Court? I'm sorry, I didn't quite get what you said. I will have, if permitted, eight minutes. The Commission will have their five minutes, the defense will go, and then my two minutes would be at the end of that? Yes, that's fine. The issue in this case is whether the plaintiffs have produced sufficient evidence upon which a jury could find that they engaged in protected activity. And there are two statutes, the Maine Human Rights Act and the Maine Whistleblowers Protection Act. The answer and the issue has been resolved against the plaintiffs, but the plaintiffs have met their prima facie burden both last year at summary judgment and in the wake of this Court's decision in Harrison v. Grant Bay care. The Court will recall that Harrison clarified this so-called job duties exception and essentially said that there is no such thing as a job duties exception. The Harrison Court relied entirely on this job duties exception that was no longer the Maine Whistleblower case.  And the parties had stipulated and there was a general understanding that there was such a thing. The Court relied entirely on that and declared that Ms. Harrison could not be a whistleblower because of the job duties exception. This Court clarified that by saying, first of all, we never said anything about a job duties exception. Secondly, that a complaint is made in good faith if the employee is motivated to oppose the employer. Now we have other cases, I believe, under the Maine Human Rights Act that hold differently, don't we? Not that I'm aware of. No? No. Judge Woodcock, in this case, extended this job duties exception that was essentially derived in part from Winslow in 2013 and said, I'm obligated to bar the plaintiff's claims under the job duties exception under the Whistleblowers Act. And by extension, because there's no case law on this point, I'm just going to assume that this applies also to the Maine Human Rights Act. Now, the Commission will speak to probably both of those statutory issues. But that was error. They found it was erroneous in Harrison and it has to be erroneous here. The District Court here, just like the District Court in Harrison, relied on the job duties exception. Can't do anything about it. The job duties exception completely bars the plaintiff's claims. Interestingly, Harrison came down in January after we had submitted our initial briefs and the court directed us to rebrief the issue in light of Harrison, which essentially the standard or the new clarified standard was whether the plaintiffs could demonstrate that they were motivated to oppose their employer. And that was announced by the Maine Law Court in Cormier v. Genesis Healthcare, a recent decision. I think the way I interpreted the Harrison decision is, that sounds reasonable to us, but Maine Law Court has ruled on this. Focus on the employee's motivation. We briefed that and we feel back, you know, summary judgment a year or so ago. And now after, in the wake of Harrison, we have met that burden. We have produced sufficient evidence that my clients, Ms. Pippin and Ms. Parker, oppose their employer. In what sense? There's a chart in my initial opening brief that describes all of the protected activity. They're housekeepers. They're not human resources professionals. Their colleague was sexually harassed. There's no dispute about that, by the way. They report that to the general manager. Are you arguing just the mere reporting of that means they oppose their employer? No. Okay. In the wake of Harrison, their motivation was to report something that was unsafe, unhealthy. Their colleague was in danger. She was very, very upset. Which would not be enough to show that they were motivated to oppose their employer, right? Excuse me? Which would not be enough to show that they were motivated to oppose their employer. The mere reporting of it initially, the defense argument is they were just doing their job because they were trained to do that. But they did more than that. They did far more than that, thank you, yes. So what's the more that they did? They made the initial report on April 24th. Excuse me, I have the chart printed over here. I want to know everything they did. I only want to know the things you think they did that constituted opposing their employer. They reported it about three different times. They went back and participated. But the first one doesn't mean they oppose their employer. I don't agree with that necessarily. The first one doesn't mean they oppose their employer? The first report isn't opposing their employer? It depends on their motivation. And there are sufficient facts to generate a disputed issue as to what they intended to do. There's record evidence that they went with her because she didn't speak English very well, that she needed help, she was extremely upset, and they went to... But how would that show they opposed their employer? It shows that they supported their fellow employee. Why would that show that they opposed their employer? They were reporting what they believed to be unlawful conduct, which is sexual harassment. That's the Whistleblowers Act. The Maine Human Rights Act, which is modeled after Title VII, is a little bit of a different standard. It's saying opposition, class... I just want to pin you down. I'm not following. So is any reporting of sexual harassment at the workplace by a fellow employee evidence that a jury could find is reporting that's motivated by opposition to the employer? Well, the Masters, Littlejohn, the cases in Maine, Harrison, all say the same thing, which is it depends on what motivated the employee. And in Littlejohn, for example, they said mere... Let me just understand this. So you have two... Let's say there's a workplace where you're supposed to report harassment if you see it. Okay? And then I'm an employee and I see someone else harassing. I report to my employer. And here's what I say when I tell the employer, pursuant to my obligation to report to you, I'm telling you I just saw harassment. And let's say I have a fellow employee who's next to me, and they write the following letter to the employer. Here's what I'm doing. I'm reporting this, and I want you to know I oppose you. Does the second person have a claim and the first person not? I think a jury should decide that issue, not a judge. Do you think that's what our precedent has left us with? No, I think that Harrison and the other cases, as well as other circuits that have decided this issue under Title VII, all say the same thing, which is if it's conveying something remotely, dispassionately, just doing your job, if you will, that may not be protected activity. Okay, so what I'm saying, what here then is evidence of the plaintiffs doing something that a jury could reasonably find was more than just conveying the information and doing their job? What's the best facts you've got for that? Well, beyond the initial complaint, which I would consider to be opposing, and evidence is sufficient to show more than that. What's in it that shows they were doing more than conveying in that initial report? Because they both went with her, they both took statements, they wrote statements, they didn't have to, the training materials say all you have to do is pass it along to the right person. They did far more than that. They went and met several times, they reported this, both in April and early May. The human resources manager came in early May, and to the defense's credit, it stopped. There's no hostile work environment claim because the harassment stopped. But beyond that, the general manager, who was under the human resources manager in Maryland, was allegedly having an affair with the harassing party. And she was biased. She was the one that investigated, and my clients didn't like that. They thought it was unfair and that it was biased, and they continued to oppose it. They continued to voice their objections into June of 2010. So all of that combined, when you look at the masters and the other cases, let's say you look at it as a whole, is certainly evidence to meet the prima facie case. Thank you. Thank you. Ms. Archer. Thank you, Your Honor. May it please the Court. The commission was here when Harrison was argued, and this Court in Harrison made clear that it had not endorsed a job duties test in Maine's whistleblower protection act. So to the extent, which seems pretty clear, that the lower court relied on Winslow's so-called job duties test, it's clear that its analysis was erroneous. The commission is here today to address the court's further error of reading a job duties test into the Maine Human Rights Act's standalone anti-retaliation provision. Unlike the whistleblower protection act, and unlike Title VII, the standalone anti-retaliation provision, which I'm going to refer to as 4633, is not an employment statute. There are significant language differences, and Maine courts and this court have respected the fact that where Maine's law is different, they don't defer to federal law. And in this case, Maine's standalone anti-retaliation act applies to any person. It is found in the miscellaneous section of the Maine Human Rights Act, not in the employment section. Excuse me, can I just ask your help on something? Am I correct that the Maine whistleblower statute is an employment-specific statute? It is, and in fact, it is not found in the Maine Human Rights Act. And in that case, it's been held that this distinction is not applicable. That this distinction is not applicable, correct. Okay. Thank you. And the commission simply wants to ensure that such an exception is not read into the Human Rights Act itself, into section 4633, which is not an employment statute, which has been interpreted and applied to individuals, to housing situations, and public accommodations. So to read something that specifically relates to job duties into such a statute simply doesn't make sense. But that's what the lower court did, and that's what it felt bound to do under this court's precedent. Harrison hadn't come down yet when the commission filed its brief, and it was that error of law that we wanted to address. So to the extent that I'm not particularly relevant anymore, I will cede the rest of my time back to Mr. Clifford for rebuttal. If that's permitted, I'm happy to answer any questions you might have. Thank you. Ms. Rand, good morning. Good morning, your honors. May it please the court. I'm Katie Rand. I'm here today for Sunverse, and I'm asking you to affirm the district court's opinion, granting summary judgment in favor of my client, not because he applied the correct analysis. We all know now that there is no such thing as a job duties exception, and I'm not going to talk anymore about the job duties exception, but because his analysis of the underlying facts are accurate, and the facts in the record show that there's no disputed fact about whether the plaintiff's engaged in protected activity. So post-Harrison, the question in this case is very simple. Did any of the several things that Ms. Pippin and Ms. Parker do constitute protected opposition? And I'll submit to you that they did not. If you look closely, if you strip the facts from the characterizations of whistleblowing, opposing, advocating, what the plaintiffs did in this case was report facts to management. Whether those were required by their job, or whether they were assisting Martin in bringing her claim forward, the question is not whether they assisted Martin, but whether they opposed. What they did specifically was accompany Martin when she requested that they do so, and stand by while Martin reported her complaint of harassment to the manager. They submitted written statements at the express request of the employer. That's undisputed. They participated in interviews. They participated in investigation at the express direction of their employer. That's undisputed. Parker wrote out a statement for Martin in Martin's voice, third person, I, in Martin's voice, and wrote right on the statement that her purpose in doing that was that Martin did not speak or read English very well. After the investigation, they each faxed a letter to human resources, reporting facts relayed to them by subordinate employees who were disgruntled about the investigation. In none of those actions that I just went through, did either Pippin or Parker express an opinion about the merits of Martin's harassment complaint, complain that Sunburst was not responding quickly enough or appropriately, including when they were passing along subordinate's complaints about the actual investigation. When you look at what they submitted, it is purely a reporting of facts relayed to them. Why couldn't a jury conclude from the last act, post-investigation, when they are still pursuing the issue even though the investigation is over, that at that point they were stepping outside the role of just conveying information in order to facilitate management making a decision, but instead now opposing the decision management made? Well, there are two problems with that piece. One is that the substance of what they do is not opposition. But I'm wondering why a jury couldn't find that the fact of doing it reflects an oppositional attitude. If a jury could find that it reflects an oppositional attitude, the question is what exactly are they opposing? What they are opposing is not an unlawful employment practice. Well, why wouldn't it be that they were opposing the discrimination? And the way they are manifesting the opposition to discrimination is the fact that nothing is being done about it. Well, something was done about it. Well, not in their view. Well, first of all, they don't express the view that nothing is being done about it. No, I understand. But if you grant the jury inferring from the fact that they continued to press the case after the fact. So what is the unlawful employment practice here? We have a co-worker who made inappropriate remarks to another co-worker and an employer that stepped in and stopped it immediately. The law doesn't require any more than that. At that point, there's no allegation of ongoing harassment or a retaliatory hostile work environment or anything. So at that point, there was no unlawful employment. In fact, there never was an unlawful employment practice. As I understand it, the regulations concerning their supervisory role, their job description, let's call it, required them to immediately report complaints of sexual harassment to the property manager or the human resources corporate person. That's correct. Now, once they made their report, were they required to do anything more? No. And did they do anything more? Did they do anything more? They assisted Martin. They did each of those steps that I walked through. Our position is not that their actions are unprotected because they were required by their job to do them. Our position is that their actions were unprotected because they aren't opposition. At most, they would be characterized as assistance. The Maine Human Rights Act, like Title VII, protects both opposition and assistance. However, there's a difference. Those two protections are different. Opposition is protected when voiced internally to the employer. Assistance or participation in an investigation is only protected when in the context of a formal Maine Human Rights Commission proceeding. While you're making that distinction in the statute, the Maine whistleblower statute is an employment-specific statute, while the other one is a general discrimination statute. It doesn't seem to make any sense to me to find that the employment-specific statute does not apply to the situation that we're talking about. While the one that is general in nature reaches a different result. I think the question under both statutes is exactly the same. Even though the word opposed does not appear in the employment-specific whistleblower statute, Winslow, Harrison, both of those cases say that what is protected by the Maine Whistleblower Protection Act is whistleblowing. And that's getting back to the motive to expose some illegality. It's whistleblowing that's protected. It's not the conveyance of information that's protected. So the question is whether they were blowing the whistle in this case, or whether they were keeping management informed. And there's an important... But if we go to what I call the second round of complaints, post-investigation, they're going directly to Mello. They're not going to the on-site manager. So essentially they're going over her head to say, what you did wasn't enough. But that's not... Isn't that oppositional behavior? If you read the faxes that they sent to Mello, they do not say what you did wasn't enough. They say, Martin and another employee, Conley, have reported to us that they're unhappy with the investigation and the way it proceeded. And at the end of one of the letters it reads, I'll keep you posted. In other words, I'm your eyes and ears. And it makes perfect sense that they would not go to Landergren, who is the manager. Didn't the letter also say that the co-worker was concerned about getting fired if she wasn't following the manager's lead? Well, again, this is a month after the investigation, which brings me back to the what's the unlawful employment practice point. But yes, that is what it says. Again, reporting a complaint of what, I guess, retaliation? Or up to management, I guess that's the... But there is no opposition by Pippin or Parker in that communication to Mello. It's purely a reporting on of information. And there isn't a single case that I could find that holds that merely conveying information, a complaint of a subordinate, up the chain, constitutes protected activity. Even when it's not required? Exactly. Absolutely. I mean, none of the cases, many of the cases involve... I put it the wrong way. Are there cases in which there is conveying of information that is not required and we've held that's not oppositional? There are cases, including the ones relied upon by plaintiff, in which the court held there was opposition, that state... But you want us to say something slightly different, which is that when there's conveying of information that's not the required conveying of information that occurs after investigation is over, that so long as there's nothing in the content of the report that the employee makes that states or manifests opposition, we have to per se say it's not oppositional. And that just seems... I don't know why we would adopt that rule. Why wouldn't you let a jury, looking at all the facts and context, make a judgment as to whether they decided that was a bit of a risky step for those employees to take that went out on them, and to the extent they get punished for it, maybe they deserve protection? Two answers to that. The context here, which is employment discrimination, there's a whole legal architecture that applies to employment discrimination and harassment claims, whereby the employer is liable if a supervisor is on notice and doesn't speak up. So when a supervisor is reporting information, whether they've been trained that you must report harassment complaints, or whether they're passing along grumblings of subordinates who don't feel something is fair, when they're passing along information to upper management or HR for purposes of investigation, they're necessarily aligned, absent some evidence that they're not aligned. And I'm not advocating that these facts... Some evidence that they weren't aligned here would be that the investigation had come to an end, and yet they were still pressing the case. Again, if you look at the actual communications to Mello, they're not pressing the case. That's the characterization issue. I guess our position is that there's nothing in those communications that would permit a jury to conclude they're pressing any case, as opposed to reporting dissatisfaction among the ranks about the case. Who was Landgren? Landgren was the manager to whom the complaint was initially reported. Okay. The facts you mentioned before about Pimmons faxed a handwritten statement to Mello, you mentioned before, stating that the employee was still upset. Yes, there were two faxes that went to Mello after the investigation. That fax also contained a statement that the manager only cared about saving Crabtree. Correct. She's reporting... What she's saying in that fax is Veronica Conley, a lower-level employee, I don't remember which one that is, or Martin, told me today that she's upset with Landgren and the way it was handled and feels that Landgren only cared about saving Crabtree. In fact, Landgren didn't conduct the investigation and isn't the one responsible for disciplining Crabtree. Does that answer your question? The concern here is that if any passing along, merely conveying of information, constitutes protected activity, employers' hands are incredibly tied when it comes to managing the workforce. There needs to be something in the communication to put the employer on notice that this employee is adverse, is oppositional. Otherwise, these employers are going to be six figures into lawyers' fees. Why wouldn't two things here be, one, this was not required, the subsequent passing on, as your answer just the way you suggested. Yes. And secondly, it also followed the employer's ending of the investigation. Both facts would suggest that here the employer should have been on some notice that they were dealing with an employee who might be considered to be oppositional. Which employee, though? I guess that's the question. The ones that the messenger, you know, don't kill the messenger, so the ones who's conveying the message. It sounds to me like they were engaging more in just conveying information. It seems the impression that I get from reading all this is that they were acting as advocates. And I guess I would challenge you to find something in the statements that they make to management that is advocating, as opposed to merely passing along information and helping somebody else. Well, they were doing more than they were required to. Well, that's absolutely true in the end. However, there's still no unlawful employment practice at that point. So there is no, nobody is complaining about it.  I understand that argument. That's a separate argument. If you didn't agree with that argument, the question of how to characterize the post-investigation steps they took, you're saying it was a blanket rule that unless there's some statement in there of advocacy, it can't ever be treated as anything other than just conveying information, even if it's not required to do so. No, I'm not going that far. I don't say the hypothetical that you posed to Attorney Clifford. I do not take the position that they need to write, you know, and we agree, we are opposed, absolutely not, some indication that they're registering a personal complaint. In, I believe it was Collazo, which is a First Circuit opinion, that was as simple as this is a very serious case that you need to take. You need to take seriously. In this case, all of the evidence shows that they were passing along information to arm their employer, that they were aligned with a purpose of preventing, allowing the employer to escape liability for harassment. If there are no further questions, I'll rest on my brief. Thank you. Thank you. Mr. Clifford. Thank you. I'll try to be very brief. There's nowhere does an employee have to make a personal complaint about their personal opposition to this, that they're somehow morally reprehended, or that the conduct is morally reprehensible. There's much to be made that the defense would believe that that is a requirement, and it's not. Their obligations to report end on April 24th. That is what they were directed to do. Here's what happened, and that's the end of it. And as I think all of the judges have noted, that didn't happen. They continued to report. If you look at the chart, April 24th was the original report. April 27th was a subsequent meeting with Ms. Landrigan, with all of them. There's another, all these memos and these handwritten statements also go to Ms. Landrigan. There are several other statements that were made, not only to Ms. Landrigan, but to Mr. Mello in anticipation of his visit for the investigation. And then as all of you have correctly noted, when you look at June 1st, there are three different reports. She's not conveying, or neither of them are conveying information. They're saying that you're covering up, that they don't trust her, and they're saying this to her boss, that there are threats to a co-worker, that if she doesn't comply, that she's going to be fired. There's reports of how upset the victim of the harassment is. None of this is required. All of this was done because they opposed their employer. And to suggest that that is just running it up the flagpole is completely inconsistent with the record, and it should be up to the jury to decide. In fact, all of the arguments that the defense makes go to causation, not to the relatively low threshold of a prima facie case. Their arguments go to, why did we fire her? Not because of what they're saying, but because of some other reason. And that's what the jury should hear. The last point I'd like to make is when you look at what Judge Woodcock stated in his opinion, clearly he was not comfortable with issuing his decision, but felt very much obligated. Here the court cannot know whether Boulevard Motel truly terminated Ms. Pippin and Ms. Parker for its stated reasons, or whether it fired them because they persisted in bearing unpleasant news and remained vocally disgruntled about Boulevard's resolution. But the court is concerned that the job duties exception has denied them their day in court. Clearly it is relying on this job duties exception that was rejected in Harrison, and based on the facts, based on Harrison's holding and clarification, and based on the fact that there are a number of disputed issues, this case should go to the jury, summary judgment should be reversed, and this case should be remanded for trial, not for further proceedings. Thank you. Thank you.